Richardson, J.,
dissented, and delivered the following opinion :
The terms of the Act are “ that in all cases,” Ac., “ where any suit or action shall be brought,” Ac., “ touching any usurious bond, specialty, contract, promise or agreement, or taking of usury,” Ac., Ac., “the borrower or party to such usurious bond,” Ac., “shall be, and is hereby declared to be a good and sufficient witness in law, to give evidence,” Ac., P. L. 284. The terms borrower and party to such bond, Ac., arc synonymous. We usually say party to a bond — borrower by parol. Both terms signify the person that received the money on his own credit and responsibility, and has been sued for it. No other person can be the borrower or party sued for the money lent. The proposition of the Act is then plainly this : Whoever is sued at law for money borrowed on usury, is made a competent witness. Now, is N. Le Roy such a person. Is he sued at law touching any usurious bond, Ac., or promise ? Is he borrower or party to any such ? Is he in any way liable for the money he obtained as agent of Emma Le Roy, and for which he gave her own note — not his ? It ought to be enough to answer that N Le Roy has been sued with his wife, the sole trader, merely for conformity ; that it is not pretended he is liable for the money. But I admit that the case is to be decided as if his name did not appear on the record; although the Act does clearly contemplate the parly or borrower as sued at law before he can be a competent witness. These three propositions are, I presume, granted. If not, they arc all proved by the fact that N. Le Roy was the mere agent of the responsible party and borrower. Emma Le Roy, and is sued with her for legal conformity only. If N. Le Roy were not the husband of Emma Le Roy, both now, and at the *151 time of borrowing the money, the error of calling him the borrower
*or party, would strike us at a glance. If he had been only the clerk of Emma Le Roy, and had negotiated the usurious loan for her, none would call him the party or borrower of the money, and he would not have been sued. Now, then, follow out that supposition. As such a clerk to Mrs. Le Iloy, he would not have been sued, and would be a good witness at common law ; but is not made so by the Act of im.
Go a step further, aud suppose the clerk, N. Le Roy, had afterwards married his principal, Emma Le Roy. It would then follow that he could no longer be a witness for or against her, at common law, and the only remaining question would be, can he then, by virtue of the Act, be made the borrower or party to the original loan, on usury, so as to be made a witness under the Act ? The answer would be this : the true character and parties to the transaction, cannot be changed by the act of Mrs. Le Roy and her clerk. “ Quod ab inilio non valet, Iractu temporis non convalescere potest.” She cannot make him the borrower. And if Mrs. Le Roy, the party and borrower, has thus chosen to render her clerk an incompetent witness, it is no more than law to allow her free agency. She took him for better for worse, which includes the legal consequence, that her former clerk can be no longer a witness for or against her, as he might before the marriage have been at common law ; and there is no alchemy in the Act to transmute the character and position he held at the time the money was borrowed. He is still no borrower or party to the loan, and always will be none. But have we not described the precise situation of Mr. LeRoy himself? He was the clerk or other agent of Mrs. LeRoy, and negotiated the loan for her, but was not credited or responsible for the money himself, and therefore not the party and borrower ; yet he was and is the husband of the true party and borrower. But whether he was the clerk .and husband at the time she borrowed the money, or was then clerk and now her husband, can make no difference in the question upon his competency as a witness by virtue of the Act.
The Act makes it depend altogether upon two facts, his being the borrower, and being sued for the money; neither of which appears in the case, but the converse. The test and condition required by the Act, is then wanting, and the case *stands clearly at common law, which forbids the husband being his wife’s witness when on or off the record.
Why is it said in some of the English cases that the husband cannot be the agent of his feme sole trader ? It cannot be that she would not be bound by his acts adopted by herself, though done by him. But because her husband cannot verify or deny her acts, on oath, and he might through their moral union destroy her lawful free agency in sole trading, &c., in which he cannot be a partaker legally. In law'they are incorporated and become as one person ; yet, by law, she may be a sole trader. And to this limited extent, they are as two separate persons, and she a free trader. Our Act, by requiring the husband to be sued with the wife “for conformity only,” illustrates well this principle; upon which the whole argument turns. But if we suffer the form to perplex and alter the doctrine, we shall soon have irresponsible husbands trading *152 under the name of their wives, as well as husbands, clerks, swearing to usury for their wives, in cases where the husband was only agent to the wife, and not the borrower of the money under the Act, nor in any way liable for the loan. But quite a different argument was also urged, though I cannot think it was relied upon, as to the odium of usury. Usury is to be put dowD. Assuredly it is, in whatever shape we discover it, lurking in a contract of borrowing. But we are to come at, point out, and prove “ such offence,” as the Act calls it, by competent and lawful testimony ; and the odious loan must be first made to appear before it can be punished. But in a case of express contract, as a note, or of vested rights, we are not at liberty, as this argument assumes, to conceive that there is something wrong, and therefore extend the strict provision of the Act, in order to destroy the contract. The odium of usury may be just. But the evidence of it, is as of strict law, as belongs to any other case ; and there can be no odium before the charge is so proved. This argument then does not apply to the true question. I cannot, therefore, support the decision that held Mr. Le Roy a competent witness.
See 2 Rich. 2. An.